IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE W. MARTHERS, III, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ALBERTO GONZALES | : | NO.  05-3778 |

### MEMORANDUM OF DECISION

THOMAS J. RUETER                                                                                June 26, 2008
Chief United States Magistrate Judge

      Presently before the court is plaintiffs' Motion for Restoration of Personal Leave, with a memorandum of law in support of the motion (Doc. No. 60) (the "Motion").  Defendant filed a memorandum in opposition to plaintiffs' Motion (Doc. No. 68) ("Def.'s Mem. of Law") and plaintiffs filed a Reply Memorandum of Law in Support of Petition for Restoration of Personal Leave (Doc. No. 71) ("Reply Br.").  For the reasons stated herein, plaintiffs' Motion is granted in part and denied in part.

**I.      BACKGROUND**

      Plaintiffs George W. Marthers, III and Jude T. McKenna, agents at the Drug Enforcement Administration ("DEA"), filed the instant action, alleging that they were victims of a racially hostile environment and of retaliation.  The case was tried before a jury for seven days, from December 6, 2007 through December 14, 2007.  The jury returned a verdict in plaintiffs' favor on each claim, awarding plaintiff Marthers $3,000,000 and plaintiff McKenna $4,000,000 in compensatory damages.  See Jury Interrogatory Form (Doc. No. 54).  Defendant filed a Motion to Amend Judgment pursuant to Fed. R. Civ. P. 59(e) and 42 U.S.C. § 1981a(b)(3)(D) to reduce

the compensatory damage award to each plaintiff to $300,000 (Doc. No. 58).  On January 3, 2008, the court entered an order so amending the judgment (Doc. No. 65).

## II.  DISCUSSION

### A.  Restoration of Annual and Sick Leave

Beginning in March and April 2002, respectively, plaintiffs Marthers and McKenna were absent from the office in connection with claims related to workplace stress.  The DEA recommended that each plaintiff undergo a Suitability Review Protocol ("SRP") that was utilized to determine whether plaintiffs were fit to return to work.  (N.T. 12/7/07 at 94; N.T. 12/10/07 at 104, 169; Exs. 100, 101.)  In January 2003, plaintiffs were notified of the results of the SRP, and were given proposed termination letters on the basis that they were unfit for duty, along with treatment agreements.  (N.T. 12/7/07 at 95, 101-02; N.T. 12/10/07 at 113; Ex.110.)  Plaintiffs were given the option of signing the treatment agreements or having their employment terminated.  (N.T. 12/7/07 at 102; N.T. 12/10/07 at 113; Exs. 110, 146.)  Plaintiffs sought to negotiate what they deemed to be the onerous terms of the treatment agreements.  (N.T. 12/7/07 at 103, 147, 174-76; N.T. 12/10/07 at 113-14, 159-60; Exs. 112, 149.)  Moreover, because of the time lag since their examination by DEA doctors in September 2002, plaintiffs requested another examination by the DEA.  (N.T. 12/7/07 at 104-06; N.T. 12/10/07 at 114-15, 164-65.)  At the time they were given the proposed treatment agreements in January 2003, plaintiffs were removed from administrative leave and were forced to use sick and/or annual leave, although plaintiffs did not authorize the use of sick and/or annual leave.  (N.T. 12/7/07 at 108-09; N.T. 12/10/07 at 115-17; N.T. 12/12/07 at 147.)  Pursuant to DEA policy, plaintiffs were entitled to

notice that their sick and/or annual leave was going to be used, but the DEA did not so notify plaintiffs. (N.T. 12/12/07 at 148.)

Plaintiffs presently ask the court, pursuant to 42 U.S.C. § 2000e-5(g), to restore their annual and sick leave from January 27, 2003 until their return to work as Special Agents with the DEA. (Mot. at 2-4.) Mr. Marthers requests that his leave be restored from January 27, 2003 to July 14, 2003 and Mr. McKenna requests that his leave be restored from January 27, 2003 to October 20, 2003. Id. at 4.

Plaintiffs contend that the court may order back pay, reinstatement, and any other equitable relief as the court deems appropriate. Id. at 2. Specifically, plaintiffs posit that where a plaintiff's illness is proximately caused by defendant's retaliatory actions, the restoration of lost sick and annual leave may be a proper exercise of the court's broad discretionary power to grant relief under Title VII. (Mot. at 2-3.)

However, lost fringe benefits, such as vacation pay, are components of an equitable back pay award under Title VII. See Landgraf v. USI Film Products, 511 U.S. 244, 253 (1994) (noting that prior to the 1991 amendments to Title VII which permitted an award of compensatory damages for acts of intentional discrimination, monetary relief for a discriminatorily discharged employee generally included "only an amount equal to the wages the employee would have earned from the date of discharge to the date of reinstatement, along with lost fringe benefits such as vacation pay and pension benefits"); Woodyatt v. Bethlehem Steel Corp., 1996 WL 334427, at *2 (E.D. Pa. June 10, 1996) (back pay award for Title VII claimant was calculated by adding lost wages to lost fringe benefits). See also Suggs v. ServiceMaster Educ. Food Mgmt., 72 F.3d 1228, 1233 (6th Cir. 1996) (a Title VII back pay award "should

include the salary, including any raises, which plaintiff would have received but for the discrimination, as well sick leave, vacation pay, pension benefits and other fringe benefits he would have received but for the discrimination"); Pettway v. Am. Cast Iron Pipe Co., 494 F.2d 211, 263 (5th Cir. 1974) (finding under Title VII that "interest, overtime, shift differentials, and fringe benefits such as vacation and sick pay are among the items which should be included in back pay"); Dye v. Bellsouth Telecommunications, Inc., 462 F. Supp. 2d 845, 852 (W.D. Tenn. Nov. 21, 2006) (a back pay award "should include the salary, including any raises, which plaintiff would have received but for the discrimination, as well as sick leave, vacation pay, pension benefits and other fringe benefits she would have received but for discrimination).

Pursuant to the Third Circuit's holding in Spencer v. Wal-Mart Stores, Inc., "a successful hostile work environment claim alone, without a successful constructive discharge claim, is insufficient to support a back pay award." 469 F.3d 311, 317 (3d Cir. 2006). In Spencer, the court reasoned that if a hostile work environment does not rise to the level where one is forced to abandon the job, loss of pay is not an issue. Id. In the present case, plaintiffs did not raise a constructive discharge claim, and accordingly, cannot support a claim for back pay, i.e., a claim for restoration of their sick and annual leave.

In any event, the court finds that the equitable considerations plaintiffs raise in this case do not warrant an award of lost annual and sick leave. Plaintiffs contend that they "justifiably refused" to sign the proposed treatment Agreements because the agreements were stale and would have subjected them to removal with no procedural due process rights. (Mot. at 3.) Plaintiffs sought to negotiate what they deemed to be the onerous provisions of the treatment agreements. However, the evidence adduced at trial does not establish that the terms of the

treatment agreements presented to plaintiffs were any more onerous than that of the treatment agreements presented to other DEA employees.

Margaret Ann Hager, a supervisory human resource specialist with the DEA, testified that in October 2002, the Department of Justice changed its policy with respect to administrative leave, withdrawing DEA's authority to grant administrative leave for periods of time in excess of ten days. (N.T. 12/12/07 at 119.) For those individuals who were currently on administrative leave at that time, the DEA was directed by the Department of Justice ("DOJ") to review all cases and to convert that administrative leave status to another alternative status. (N.T. 12/12/07 at 119.) The DOJ did not give the DEA the option of keeping employees on administrative leave, but the policy change gave the DEA the ability to appeal to DOJ to keep individuals on administrative leave. (N.T. 12/12/07 at 119-20.) At the time of the policy change, the DEA had approximately thirty individuals, including plaintiffs, on administrative leave. (N.T. 12/12/07 at 120.) The DEA asked the DOJ to have certain individuals remain on administrative leave, but that request was denied. (N.T. 12/12/07 at 120.) By February or March 2003, all individuals who had been on long-term administrative leave as of November 2002, except Mr. Marthers and Mr. McKenna, had either (1) voluntarily entered into treatment agreements and were using their accrued leave or were in leave without pay status, or (2) been terminated from employment with the DEA. (N.T. 12/12/07 at 127.)[1]

Furthermore, the court is not persuaded by plaintiffs' argument that the DEA's decision to enforce their personal leave, without their consent or authorization, was retaliatory

---

[1] Ms. Hager acknowledged that she was not aware of any other case in which an employee had been the subject of enforced leave under circumstances where he did not consent to the use of his leave. (N.T. 12/12/07 at 153.)

because those involved in the process were aware that plaintiffs had filed EEOC complaints. See Mot. at 3.  Ms. Hager testified that she read plaintiffs' medical documentation in November or December 2002 which mentioned the existence of the EEOC complaints and thus was aware in January 2003 that plaintiffs had filed EEOC complaints. (N.T. 12/12/07 at 130-31, 149-50, 153.) However, Ms. Hager also testified that when she read the medical documentation, she did not focus on that issue. (N.T. 12/12/07 at 130-31, 149-50, 153.)  Rather, Ms. Hager testified that the first time she recalled recognizing that plaintiffs had filed EEOC complaints was during a conversation that she had with a DEA attorney regarding the conversion of plaintiffs' leave status. (N.T. 12/12/07 at 130-31, 149-50.)  Ms. Hager testified that her conversation with the DEA attorney took place after Mr. McKenna had entered leave without pay status, which would have been after January 2003. See N.T. 12/12/07 at 130-31, 149-50.  Although the jury found that defendant retaliated against plaintiffs, it is unclear from the jury's verdict whether the DEA's decision to enforce their personal leave was a component of the retaliation finding.  Based on the evidence at trial, equitable considerations do not warrant an award of lost annual and sick leave.

For the foregoing reasons, plaintiffs' claims for the restoration of their annual and sick leave is denied.

      **B.**    **Conversion of Mr. McKenna's Leave Without Pay Status**

In their Motion, plaintiffs also request that Mr. McKenna's leave without pay ("LWOP") status be retroactively converted to administrative leave. (Mot. at 4.)  Mr. McKenna was on LWOP status for approximately nine or ten weeks, from some time in July 2003 until his return to limited duty work in October 2003. (N.T. 12/7/07 at 110.)

At trial, Mr. McKenna testified that while awaiting the results of his SRP, he contacted Ms. Hager and requested that the DEA expedite the SRP process because he was about to be converted to LWOP status, and also to request that his annual and sick leave be restored. (N.T. 12/7/07 at 110, 118, 128; Exs. 153, 157, 159, 161, 162, 163, 165.)  As a result, Ms. Hager contacted the DOJ attorney who handles administrative leave cases to determine whether there was any relief available to convert Mr. McKenna's upcoming LWOP status. (N.T. 12/12/07 at 129.)  Ms. Hager testified that after initially receiving negative feedback from the DOJ attorney, she was informed by another DOJ official, Joanne Simms, that she could submit a written request to convert Mr. McKenna's LWOP status to administrative leave, retroactive to when the LWOP status first began. (N.T. 12/12/07 at 130-31, 134.)  Ms. Hager testified that Ms. Simms authorized her to convert Mr. McKenna's LWOP to administrative leave, retroactive to leave period fourteen until he returned to work in October 2003. (N.T. 12/12/07 at 130-31.)  Ms. Hager testified that to her knowledge, the conversion from LWOP to administrative leave was completed. (N.T. 12/12/07 at 131.)  According to Ms. Hager's testimony, she directed the timekeeper in the Philadelphia office to make the conversion, but did not follow up to determine whether the conversion had been completed. (N.T. 12/12/07 at 153.)  However, plaintiffs maintain that Mr. McKenna's LWOP status was never converted to administrative leave. (Mot. at 4.)

As the foregoing testimony makes clear, the DOJ and DEA reached an agreement to convert Mr. McKenna's LWOP status to administrative leave for the relevant time period during July to October 2003.  The court finds that defendant should conduct an investigation into

7

its records to determine whether the conversion was completed, and if it was not completed, take any and all steps necessary to complete the conversion as promised.

Accordingly, plaintiffs' motion is granted in part and denied in part. An appropriate order follows.

BY THE COURT:

/s/ TJR
THOMAS J. RUETER
Chief United States Magistrate Judge